**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**GREGORY R. CHAPA**                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 5:26-CV-00063-CRS**

**ANN LEVEL,** *et al.*                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Gregory R. Chapa, who is proceeding *in forma pauperis*, filed this *pro se* prisoner

action pursuant to 42 U.S.C. § 1983.  This matter is currently before the Court on initial review of

the complaint pursuant to 28 U.S.C. § 1915A.  For the reasons set forth below, the Court will allow

one claim to proceed for further development, dismiss the remaining claims, and allow Plaintiff to

amend the complaint.

### I. SUMMARY OF THE COMPLAINT

Plaintiff identifies as a convicted inmate housed at the Fulton County Detention Center

(FCDC) at the time relevant to the instant complaint.

The complaint names as Defendants Ann Level, Nurse Administrator; Nurse Hanna; Nurse

Masey; Meredith, Medical Provider; and Scott Wilson, Owner/Operator, all of whom are alleged

to be employees or associates of 3C Medical, the entity which Plaintiff alleges is contracted to

provide medical services at the FCDC.  Elsewhere in the complaint,[1] Plaintiff names FCDC

personnel Lt. Ronnie Fain, Ann Pearson, Chief Easley, and Jailer Williams; as well as Kentucky

Department of Corrections Commissioner Cookie Crews.  He seeks to sue all Defendants in their

"individual and/or official" capacities.

---

[1] These Defendants are not listed in the caption of the complaint; however, Plaintiff expresses his intent to include these individuals in the present action.

Plaintiff sets forth five "Claims for Relief" which he avers state violations of the Eighth and Fourteenth Amendments of the United States Constitution and Section 10 of the Kentucky Constitution.

Plaintiff first alleges that he was housed at FCDC since approximately January 15, 2026. Sometime after his arrival, he signed up for unspecified "programs," but has since been denied programming through the date of his complaint. Plaintiff states that "it could be retaliatory related because of all the grievances I filed on the kiosk." He alleges that FCDC offers at least nine different programs, but none are available for "immediate entry." He states that other inmates at the facility have similarly faced lack of program access.

Plaintiff's second claim alleges that Defendants Meredith, Level, Hanna, Masey, "and by and through the owner/operator of 3C Medical [Defendant Wilson]," improperly administered his medication assisted treatment (MAT) for substance abuse. Specifically, he claims that the suboxone he received from these Defendants was crushed and diluted in water and that his previous, regular dose was reduced from 16mg to 8mg after he entered FCDC "without [his] informed consent or explanation . . . ." He states that the improper administration of his Suboxone caused him to "initially have withdrawal symptoms and intense cravings for heroin that I still have to date." Because of the ineffectiveness of the medication, Plaintiff claims he "went through so much withdrawal and cravings for heroin I had no choice but to stop taking it." Plaintiff states that Defendants Level, Hanna, and Masey explained to him, "this is how we do it." In support of this claim, Plaintiff avers that he has "reliable info. off Chat GPT . . . regarding the proper and improper administration of Suboxone."

In his third claim, Plaintiff alleges that he believes he tore a ligament while exercising at his prior facility and continued to have excruciating pain in the arm when he was transferred to

2

FCDC such that he could not move the arm in certain directions or sleep on his left side.  Plaintiff alleges that he put in a sick call and Nurse Level had him sign a release form, but he did not receive any medical treatment.  He states that he believes he "need[s] surgery that 3C is not wanting to pay for."

The fourth claim for relief alleges that before arriving at FCDC, Plaintiff was diagnosed with "dilusional, paranoid at times and depression" and had been prescribed Zyprexa.  Plaintiff states that he has a long history of mental health issues and has required both inpatient and outpatient psychiatric treatment.  He further alleges that that he put in a sick call at FCDC to "see a psychiatrist for a change of meds" because Zyprexa was "ineffective," but Defendant Masey told him that "they don't have one."

Plaintiff's fifth claim alleges inadequate sanitation at FCDC.  He states that there is black mold in the cells and shower areas which has caused him to have breathing and sinus issues.  In addition, Plaintiff claims that: he is not provided with sufficient germicide/all purpose cleaner to keep his cell clean, the jail has poor ventilation "with dust clogged in air vents," and that his cell was without heat for two weeks causing it to be cold because the "heating system is in need of maintenance or upgrade because the former jailer whom was imprisoned embezzled funds and the money source needed for this was never replaced."

Plaintiff states that he filed grievances on all the issues he complains of with "no result."  As relief, Plaintiff seeks monetary and punitive damages, and injunctive relief in the form of "ordering 3C Medical to provide necessary medical treatment I need as described herein."

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion

3

of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a

4

person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Medical Treatment Claims

An Eighth Amendment claim of deliberate indifference to a prisoner's medical needs has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). The subjective component requires a defendant's "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837-47 (1994)).

The Sixth Circuit "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.* "Deliberate indifference is a high standard; consequently, medical malpractice, negligent diagnosis or treatment, and mere disagreement with medical treatment are inadequate to state a § 1983 claim." *Theriot v. MacLaren*, No. 21-2596, 2022 WL 2161391, *2 (6th Cir. Mar. 16, 2022) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017)).

5

### *1. Medication Assisted Treatment*

Plaintiff asserts that his MAT was improperly administered by Defendants Meredith, Level, Hanna, and Masey, "by and through the owner of 3C Medical [Wilson]."  Specifically, he alleges that at an unspecified time, his dosage of Suboxone was reduced from 16mg to 8mg "without [his] informed consent or explanation," causing him to suffer initial withdrawal symptoms and continued cravings.  Plaintiff further alleges that the medication was crushed and diluted in water.  He asserts that he had "no choice but to stop taking it because it was totally ineffective . . . ."  Plaintiff continues, "the only explanation I got from [Defendants Level], Hanna, and Masey was 'this is how we do it.'"  He maintains that he has "reliable info. off Chat GPT which is a reliable source of info. regarding the proper and improper administration of Suboxone."

While opioid withdrawal symptoms can constitute a serious medical need, *see Preyor v. City of Ferndale*, 248 F. App'x 636, 642 (6th Cir. 2007), Plaintiff fails to allege that he had observable signs of withdrawal and does not elaborate on the nature or severity of his symptoms.[2] Nor does the complaint contain sufficient facts to suggest that any of the named medical providers knew of a substantial risk to Plaintiff's health by lowering his medication dosage or dispensing the medication in the manner described.

Instead, Plaintiff's allegations present a disagreement with the course of treatment, *i.e.*, the prescribed dosage of Suboxone and the way it was administered, which is insufficient to state an Eighth Amendment violation.  *See, e.g.*, *Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) ("Mabry's claim against Dr. Antonini is merely a complaint that he did not order specific tests, or provide specific medications, treatment, or dosages.  Such an assertion does not state a constitutional claim of deliberate indifference as to serious medical needs."); *Cameron v.*

---

[2] Plaintiff appears to suggest that he discontinued Suboxone treatment of his own volition due to its ineffectiveness, indicating the absence of a serious medical need mandating treatment.

6

*Kentucky*, No. 4:18CV-P72-JHM, 2018 WL 6329752 at *4 (W.D. Ky. Dec. 4, 2018) (citing *Westlake*, 537 F. 2d at 860 n.5) ("Plaintiff was receiving treatment for his diabetes in the form of regular insulin shots. Plaintiff disagrees with the dosage he received. His allegations concerning his insulin dosage amount to a difference of opinion over the adequacy of the treatment he is receiving. The Court will not second guess the judgment made by the jail's medical staff.").

Moreover, while Plaintiff's dispute with the dosage of medication he was receiving may amount to medical negligence, it does not rise to the level of grossly inadequate care. *See Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) ("[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.") (internal quotation marks omitted); *Williams v. Hardin Cnty. Det. Ctr.*, No. 3:16CV-P186-GNS, 2019 WL 1427550, at *9 ("[The plaintiff's] complaints, including those about the dosage of Depakote he was prescribed, may sound in state tort law, but negligence is not sufficient to state an Eighth Amendment claim.") (citation omitted). Thus, Plaintiff's deliberate indifference claim arising from the administration of his MAT must be dismissed.

### 2. Arm Injury

Plaintiff also states that he suffered an injury to his left arm which limited his movement and caused "excruciating pain." He alleges that he put a sick call and that Defendant Hanna had him sign a medical release, but he never received any medical treatment. <u>Upon review, Plaintiff's Eighth Amendment deliberate indifference claim may proceed against Defendant Hanna in her individual capacity</u>.

### 3. Mental Health Treatment

Inmates have an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). As stated above, to state an Eighth Amendment violation for deliberate indifference, a plaintiff must allege a "sufficiently serious" medical need and that the defendants knew of a substantial risk of serious harm but knowingly disregarded that risk. *See Farmer*, 511 U.S. at 834-837.

Here, Plaintiff alleges only that he was told by Nurse Massey that there was no mental health provider on staff but does not allege any additional facts to plausibly suggest a constitutional violation relating to his mental health treatment, *e.g.*, that he was denied treatment or that the lack of on-staff psychologist led to inadequate care. *See, e.g., Grubbs v. Bradley*, 552 F. Supp. 1052, 1130 (M.D. Tenn. 1982) ("That more extensive on-site mental health services are not currently available . . . is lamentable and disturbing, but does not at the present time evidence the deliberate indifference to serious needs, necessary to show cruel and unusual punishment."). This claim must therefore be dismissed. Plaintiff may amend his complaint, however, to provide additional factual allegations pertaining to his mental health treatment at FCDC and to identify the Defendants involved.

### B. Conditions Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the

"minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* In other words, a condition must be sufficiently serious so as to constitute a substantial risk of serious harm. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). A deliberate indifference claim of unconstitutional conditions further requires that a defendant prison official have a culpable state of mind or that he or she acts or fails to act with deliberate indifference to inmate health and safety. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

### 1. Sanitation and Ventilation

Plaintiff's allegation that inadequate ventilation, lack of proper sanitation, and black mold in the cell and shower areas which caused him to suffer breathing problems could state a potentially cognizable conditions of confinement claim under the Eighth Amendment. However, a plaintiff "must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). Plaintiff's allegations about the conditions of his confinement do not specify which Defendant, if any, was responsible for the alleged conditions. As such, this claim must be dismissed for failure to state a claim upon which relief may be granted. *See Sampson v.*

9

*Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) ("Even a pro se prisoner must link his allegations to material facts and indicate what each defendant did to violate his rights.") (citations omitted); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of § 1983 claim for or failure to state a claim where plaintiff did not allege which of the named defendants were personally responsible for the alleged violations of his rights); *Lister v. Allen Oakwood Corr. Inst.*, No. 3:19-cv-1583, 2020 WL 1140071 at *3 (N.D. Ohio Mar. 9, 2020) (dismissing claims where the plaintiff generically alleged unconstitutional actions were committed by "Defendants" or "they" for failure to specify which defendant or defendants violated the plaintiff's rights).

However, the Court will grant leave to amend the complaint to afford Plaintiff the opportunity name and identify as Defendants the FCDC officials who knew of the alleged unsanitary and poorly ventilated conditions of confinement and explain how each Defendant was deliberately indifferent to these conditions.

### 2. Cell Temperature

As to the allegation that Plaintiff's cell temperature was cold for two weeks, this must be dismissed for failure to state a claim. "[C]onstitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmate's health." *Grubbs*, 552 F. Supp. at 1122-23. Plaintiff's statement that his cell was "so[ ] cold" is vague, and his supporting allegation that the "heating system is in need of maintenance or upgrade because the former jailer whom was imprisoned embezzled funds and the money source needed for this was never replaced" is entirely speculative. *Hudson v. Woosley*, No. 4:25-CV-66-JHM, 2026 WL 243217, at *6 (W.D. Ky. Jan. 29, 2026) ("Plaintiff's vague and conclusory statement about the temperature does not rise to the level of an '[e]xtreme deprivations' to meet the objective standard.") (collecting cases). This claim must be dismissed.

10

**C. Programming, Retaliation Claims**

As a general matter, prisoners do not have a constitutional right to participate in particular rehabilitative, educational, or vocational training programs. *See, e.g.*, *Rhodes*, 452 U.S. at 348 (diminished "job and educational opportunities . . . do not inflict pain, much less unnecessary and wanton pain; deprivations of this kind simply are not punishments."); *Griffin v. Kallen*, No. 84-1859, 791 F.2d 933, 1986 WL 16813 at \*1 (6th Cir. Apr. 16, 1986) (a "prisoner has no constitutional entitlement to a particular classification or to any particular eligibility for rehabilitative programs"); *Lane v. Love*, No. 3:21-cv-346-RLJ-DCP, 2021 WL 5710086, at \*4 (E.D. Tenn. Dec. 1, 2021) (an inmate "does not have a constitutional right to jail educational programs.") (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (W.D. Mich. Feb. 25, 2010) (holding that "[p]risoners have no constitutional right to rehabilitation, education, or jobs")); *Parr v. Caruso*, No. 1:10-cv-109, 2010 WL 727106, at \*3 (W.D. Mich. Feb. 25, 2010) (collecting cases) (explaining that "[f]ederal courts consistently have found that prisoners have no constitutionally protected interest in vocational, rehabilitation, and education programs based on the Fourteenth Amendment" and that "prisoners do not have a fundamental right to prisoner reentry services under the Constitution."); *Brandon v. Harmon*, No. 1:20CV-P199-GNS, 2021 WL 1601552, at \*3 (W.D. Ky. Apr. 23, 2021) (dismissing on initial review where "Plaintiff's claims concerning being housed in a county facility without access to rehabilitative programs must be dismissed for failure to state a claim upon which relief may be granted.").

Plaintiff alleges that he was denied programming while at FCDC but does not specify the type of programming in which he sought to participate. Elsewhere in the complaint, however, Plaintiff states that he had been in a "BHU program" at a prior facility which, according to Plaintiff, "is a program for the mentally ill." He also asserts that the denial of programming "could be

retaliatory related because of all the grievances I filed on the kiosk."  Plaintiff does not attribute the denial of programming or retaliatory motive to any named Defendant.

To the extent that Plaintiff alleges he was denied programming in retaliation for his filing of grievances, the Court construes this an attempt to state a First Amendment retaliation claim. However, Plaintiff has failed to identify the individuals who were personally involved in retaliating against him by prohibiting him from participating in certain programs at FCDC.  Plaintiff will be granted leave to amend this claim to identify the Defendants involved, the type of program he was denied and to expound upon his claim of retaliation under the First Amendment.

### D. Official Capacity Claims—3C Medical Defendants

Official-capacity claims against Defendants "'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Therefore, Plaintiff's official capacity claims against Defendants Meredith, Level, Hanna, Masey, and Wilson are construed as brought against their employer, 3C Medical. *See Graham*, 473 U.S. at 166.  The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as 3C, which Plaintiff alleges is contracted with the FCDC to provide medical services to inmates.  *See Street v. Corr. Corp. of Am.,* 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").  A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 691.  Thus, liability of a contracted private entity must be based on a policy or custom of

12

the entity.  *Street*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Plaintiff alleges that, "from my general knowledge of these type of injuries I definitely need surgery that 3C Medical is not wanting to pay for."   Insofar as he intends to raise a claim against 3C Medical based on a policy or custom, this allegation is too conclusory and speculative to state a claim for relief.  *See Iqbal*, 556 U.S. at 678 (holding that a complaint does not suffice if it tenders "'naked assertion[s]' "devoid of "'further factual enhancement'"") (citation omitted); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  Because Plaintiff fails to state a claim against 3C Medical for a deliberately indifferent policy or custom, the official capacity claims against Defendants Meredith, Level, Hanna, Masey, and Wilson for failure to state a claim upon which relief may be granted.

### E. Supervisory Liability—Defendant Wilson

To state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  "Because § 1983 liability cannot be imposed under a theory of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability."  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).  "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy*, 729 F.2d at 421.  The acts of one's subordinates are not enough, nor can supervisory liability be based upon

13

the mere failure to act.  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Plaintiff alleges no personal involvement by Defendant Wilson anywhere in the complaint. Instead, the allegations against Wilson are based solely upon his alleged ownership of 3C Medical, and thus Plaintiff's constitutional claims against Defendant Wilson in his individual capacity must be dismissed for failure to state a claim upon which relief may be granted.

### F. Defendants Fain, Pearson, Easley, Crews, and Williams

While Plaintiff indicates that he seeks to sue Fain, Pearson, Easley, Crews, and Williams, he does not attribute any of the alleged constitutional violations to these Defendants.

If a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier*, 41 F. App'x at 764 (dismissing the plaintiff's claims because the complaint did not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each" alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

If Plaintiff can in good faith plausibly allege the personal involvement of any of these Defendants that caused the constitutional violations he claims, Plaintiff may file an amended complaint setting forth those allegations as ordered below.

14

Moreover, Plaintiff's complaint does not allege a custom or policy of Fulton County, and thus any official capacity claims against Fain, Pearson, Easley, and Williams are subject to dismissal. *See, e.g.*, *Brown v. Phelps*, No. 5:25-CV-P76-JHM, 2025 WL 1748363, at *2 (W.D. Ky. June 24, 2025) (dismissing official capacity claims on initial review where plaintiff's allegations did not show a constitutional injury due to a policy or custom of county). However, to the extent that Plaintiff suggests that the unconstitutional conditions of his confinement were a result of a custom or policy of Fulton County, he will be permitted to amend his complaint accordingly.

Finally, any claim against Defendant Crews in her official capacity cannot be maintained for an additional reason. Defendant Crews, as Commissioner of the Kentucky Department of Corrections, is a state official, and claims brought against state officials or employees in their official capacities are no different from a suit against the Commonwealth of Kentucky. *See Graham*, 473 U.S. at 166. When state officials are sued in their official capacities for damages, they are not "persons" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities for damages are not considered persons for the purpose of a § 1983 claim). Moreover, state officials sued in their official capacities for damages are also absolutely immune from § 1983 liability under the Eleventh Amendment. *See Graham*, 473 U.S. at 169 ("This Eleventh Amendment bar remains in effect when State officials are sued for damages in their official capacity."). For these reasons, the Court will dismiss Plaintiff's official capacity claims against Defendant Crews for damages for failure to state a claim upon which relief may be granted and for seeking damages from a defendant immune from such relief.

15

## G. Claim for Injunctive Relief

The complaint seeks injunctive relief in the form of necessary medical treatment. The record reflects that Plaintiff is no longer housed at FCDC. (DN 6). Generally, an inmate's release from prison or transfer to another prison moots the request for injunctive relief regarding conditions at that facility. *See Yaklich*, 148 F.3d at 601 (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility). Because Plaintiff has been transferred away from FCDC, where the claims of denied medical treatment arose, his claim seeking injunctive relief is moot and must be dismissed.

## H. State Constitutional Claims

Plaintiff alleges that his claims also arise under Sections 10 of the Kentucky Constitution, which is entitled "Security from search and seizure; conditions of issuance of warrant." Ky. Const. § 10. Plaintiff's claims bear no relevance to this state constitutional provision, and, in any event, state law does not recognize a private cause of action under the Kentucky Constitution. *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 615 (W.D. Ky. 2011); *see also Davies v. Trigg Cnty., Ky.*, No. 5:16-CV-00068-TBR, 2016 WL 7105931, at *11 (W.D. Ky. Dec. 5, 2016) ("This Court has rejected claims arising under the Kentucky Constitution on multiple prior occasions, and it does so again today."). Any claims alleged to arise under the Kentucky Constitution must therefore be dismissed.

## IV. CONCLUSION

In summary, with the exception of his Eighth Amendment claim for deliberate indifference to medical needs pertaining to his arm injury against Defendant Hanna in her individual capacity, the Court will dismiss the remainder of the complaint without prejudice and with leave for Plaintiff to file an amended complaint to allege facts supporting his First Amendment retaliatory denial of

16

programming claim, Eighth Amendment medical indifference claim pertaining to his mental health treatment, and his Eighth Amendment conditions of confinement claim pertaining to sanitation and ventilation. *See Rashada v. Fiegel*, No. 23-1674, 2024 WL 1367436, at *4 (6th Cir. Apr. 1, 2024) (approving dismissal of *pro se* complaint without prejudice and with leave to amend).

Should Plaintiff wish to amend his complaint, he must submit a completed § 1983 complaint form identifying the Defendants whom he alleges violated his constitutional rights and what actions they took. Plaintiff shall provide a short and plain statement of his claims and link their factual allegations to specific legal claims against each defendant. *See* Fed. R. Civ. P. 8.

### V. ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Hanna in her individual capacity based upon a denial of medical treatment for his arm injury will proceed for further development. In permitting this claim to continue, the Court passes no judgment on its merit and ultimate outcome.

**IT IS FURTHER ORDERED** that the remainder of the complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **Plaintiff may file an amended complaint on the Court-supplied § 1983 complaint form on or before September 8, 2026**.

The Clerk of Court is **DIRECTED** to place this case number and word "Amended" on a § 1983 complaint form and send it to Plaintiff, should Plaintiff choose to amend the complaint.

The Clerk of Court is **FURTHER DIRECTED** to terminate Scott Wilson as a Defendant in this action.

17

The Court will enter a scheduling order after Plaintiff files an amended complaint or the time for doing so expires.

Date:   August 5, 2026

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
4411.015

18